IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL SCHEUERMAN | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. DKC-18-2655 |
| STATE OF MARYLAND, CASE MANAGER O'LEARY, LT. DONOWAY, COMMISSIONER OF CORRECTION, | * | |
| | * | |
| Defendants | * | |

***

**MEMORANDUM OPINION**

Defendants filed a motion to dismiss or for summary judgment in response to the civil rights complaint filed by Plaintiff Daniel Scheuerman. ECF No. 14. Mr. Scheuerman sought an extension of time in which to file a response and moved for the appointment of counsel on June 17, 2019. ECF No. 16. Mr. Scheuerman's request for an extension of time was granted and he was provided until September 20, 2019, to file a response in opposition to Defendants' motion. The court denied his request for appointment of counsel without prejudice, finding that he had demonstrated the wherewithal either to articulate the legal and factual basis of this claims himself or secure meaningful assistance in doing so. ECF No. 17. He was advised, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), of the consequences of failing to respond. ECF No. 15. To date, Mr. Scheuerman has not filed a response to Defendants' motion to dismiss or for summary judgment. Upon review of the record the court deems a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Defendants' motion will be granted.

**Background**

Mr. Scheuerman is an inmate committed to the custody of the Maryland Division of Correction and currently confined at Maryland Correctional Institution-Jessup ("MCIJ"). His complaint concerns his transfer from Eastern Correctional Institution ("ECI"), where he was assigned to protective custody ("PC") status, to MCIJ, where he was placed in general population. ECF No. 1 at 3. According to Mr. Scheuerman, his transfer did not comply with Division of Correction directives because the Commissioner of Correction was not consulted prior to his removal from PC and placment into general population. *Id*. He claims that because this additional level of review was not performed, he was stabbed at MCIJ by a member of a prison gang known as Dead Men Incorporated or DMI. *Id*. Mr. Scheuerman was targeted by the gang because he gave information about a murder committed by DMI members and worked with the FBI in its investigation on the murder. *Id*. He admits he "requested to be taken off of PC" but believes he would not have been stabbed "if they would have went (sic) through the proper procedures & checked w[ith] the Commissioner of Corrections." *Id*. As relief, Mr. Scheuerman seeks to sue the State of Maryland for negligence and failure to protect and ants to be "placed back on a safe PC unit or be allowed to be kept on admin/PC." *Id*.

Defendants seek dismissal of the complaint (1) based on Mr. Scheuerman's failure to assert conduct or omissions to act by Defendants that resulted in his injury and (2) because his request for injunctive relief has been made moot by events that occurred subsequent to the filing of his complaint. ECF No. 14-1 at 1-3. In the alternative, Defendants seek summary judgment in their favor because he fails to substantiate a claim under the Eighth Amendment. *Id*. at 2.

## Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint. *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require a defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or

conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson,* the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252. This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**Analysis**

I.   Sufficiency of the Complaint

The individual Defendants assert that the complaint should be dismissed because it contains no allegations against them; rather, they are simply listed in the caption of the complaint. The only named Defendant mentioned in the factual narrative provided by Mr. Scheuerman is the Commissioner of Correction, but the allegation as to the Commissioner is also insufficient. Mr. Scheuerman simply states that the Commissioner should have been consulted prior to his removal from PC and his transfer to MCIJ. ECF No. 1 at 3. Liability under 42 U.S.C. § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Here, Mr. Scheuerman has failed to articulate what each of the named Defendants did or failed to do that resulted in his injury. To the extent that Mr.

5

Scheuerman's self-represented status contributed to or was the cause of his failure properly to state the claims against each of the named Defendants, the complaint still fails.

II.     Eleventh Amendment Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id*., citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 100 (emphasis in original). Mr. Scheuerman's claim against the State of Maryland is barred and will be dismissed.

III.    Injunctive Relief and Mootness

Even if Mr. Scheuerman had alleged a complaint against a proper individual, his request for injunctive relief would be moot. Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp*., 494 U.S. 472, 477 (1990) (citations omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013) (internal quotation marks omitted).

Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use. *See, e.g.*, *Tawwab v. Metz*, 554 F.2d 22, 23-24 (2d Cir. 1977); *Bradley v. Judges of Superior Court*, 531 F.2d 413 (9th Cir. 1976); *Locke v. Bd. of Public Instruction*, 499 F.2d 359 (5th Cir. 1974); *Wilkinson v. Skinner*, 462 F.2d 670 (2d Cir. 1972); *Uzzell v. Friday*, 401 F. Supp. 775 (M.D.N.C. 1975), *aff'd in pertinent part*, 547 F.2d 801 (4th Cir. 1977); *Rappaport v. Little League Baseball, Inc*., 65 F.R.D. 545, 547-48 (D. Del. 1975).

Defendants assert, and Mr. Scheuerman fails to dispute, that following his assault at MCIJ he signed a "Protective Status Request/Waiver Form" stating that he did not wish to be on protective custody. *See* ECF No. 14-8 (verified records) at 3. Handwritten on the form is Mr. Scheuerman's statement that: "I do not fear for my safety here at MCIJ. I do not have issues with DMI or any other gangs here." *Id*. The document is dated January 29, 2019, approximately five months after Mr. Scheuerman filed his complaint with this court. *Id*. "[T]o survive summary judgment, [plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must

demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

The undisputed evidence here supports Defendants' position that Mr. Scheuerman's request for injunctive relief is moot in light of his waiver of assignment to PC.

IV.     Failure to Protect from Violence

Similarly, his claim for failure to protect would fail on the merits. In order to prevail on an Eighth Amendment claim of failure to protect from violence, Mr. Scheuerman must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer,* 511 U.S. at 833-34 (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another

translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence'" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128. Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

9

Here, it is undisputed that on February 16, 2018, Mr. Scheuerman asked to be removed from PC while he was confined at ECI, stating he no longer felt safe on the PC tier because he owed money to other inmates housed there. *See* ECF No. 14-4 at 4 and 5. Mr. Scheuerman made the request during a meeting with Defendant case manager Edmund O'Leary. *Id*. at 1, ¶5. Pursuant to his request, a team consisting of Defendant O'Leary, Case Manager McCabe, and Defendant Lt. Donoway met on March 2, 2018, and "completed and submitted [their] review and recommendations" in response to Mr. Scheuerman's request. *Id*. at 2, ¶6. The team recommended that Mr. Scheuerman be assigned to "special confinement housing as administrative segregation PC and then to general population on the date of transfer to another medium security facility (other than WCI and MCI-H, where [he] had verified enemies)." *Id*.

In an optional review, Case Management Supervisor Amy Gragg and Acting Case Management Manager William Bailey concurred with the team's recommendation on March 6, 2018. ECF No. 14-4 at 2, ¶6. Assistant Warden Walter West also conducted an optional review of the team's recommendation and concurred. *Id*. On March 7, 2018, Warden Foxwell approved the decision to remove Mr. Scheuerman from protective custody and assign him to general population on the date of his transfer. *Id*. Following Warden Foxwell's approval, Defendant O'Leary informed Mr. Scheuerman of the decision. *Id*. Mr. Scheuerman offered no objection to the decision. *Id*.

Mr. O'Leary characterizes the decision made for Mr. Scheuerman's transfer and change in housing status as a "careful one, intended to protect [Mr. Scheuerman] until he could be moved to a different facility." ECF No. 14-4 at 2, ¶7. Mr. O'Leary explains that in order to address Mr. Scheuerman's situation where he was no longer safe in PC but would also not be safe in general population at ECI, he was placed in "special confinement" which Mr. O'Leary describes as "a

hybrid of protective custody and administrative segregation." *Id*. This is where Mr. Scheuerman stayed until he could be transferred to a medium security facility where he had no known enemies, which excluded Maryland Correctional Institution Hagerstown (MCIH) and Western Correctional Institution (WCI). *Id*. at 2-3, ¶7. When another case management review was conducted on May 2, 2018, Mr. Scheuerman was continued on administrative segregation PC until he could be transferred to general population at another medium security prison where he had no known enemies. ECF No. 14-4 at 3, ¶8. When informed of the decision, Mr. Scheuerman voiced no objection. *Id*.

The case management reviews demonstrate that Defendants had no subjective knowledge that Mr. Scheuerman would likely be assaulted if he was transferred to MCIJ. The reviews also establish an objective need for Mr. Scheuerman's removal from PC to ensure his safety. His self-reported indebtedness to other inmates in the PC unit at ECI represented a viable threat to his safety. Far from maliciously turning a blind eye to Mr. Scheuerman's plight and the reported threat to his safety, Defendants O'Leary and Donoway took reasonable and considered steps to ensure Mr. Scheuerman remained safe pending his transfer. As such, they are entitled to summary judgment in their favor.

IV.     Supervisory Liability

Mr. Scheuerman's claim against the Commissioner of Correction appears to be based on a perceived duty on the part of the Commissioner to perform additional reviews of transfers where an inmate is being removed from PC. ECF No. 1 at 3. A valid claim against supervisory officials such as the Commissioner of Correction "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries

11

they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Defendants explain that there is no procedural requirement for the review suggested by Mr. Scheuerman. The applicable institutional directive provides that the Warden or the Warden's designee shall approve any removal from administrative segregation resulting from either the completion of an investigation or a Case Management review. ECF No. 14-5 at 4; (ECI.ID.100.0001.1.F). The Division of Correction's Case Management Manual provides further direction for placement and removal of an inmate on PC status. ECF No. 14-6 (Case Management Manual). Specifically, it provides that an inmate's status on PC "shall be reviewed by a case management team upon receipt of information that may warrant reconsideration of an inmate's continued assignment to protective custody." *Id.* at 8 (DOC.100.002.18.E(8)(a)(ii)). While the provisions also require review and final decisions for removal from and assignment to PC by the "managing official" (*see id.* at 3, ¶E), that term does not refer to the Commissioner of Correction. Rather, that term is defined by Md. Code Ann., Corr. Svcs. Art. § 1-101 as "the administrator, director, warden, superintendent, sheriff, or other individual responsible of the management of a correctional facility." The Case Management Manual further clarifies that the Commissioner of

Correction is not charged with the responsibility of reviewing decisions on assignments to protective custody or administrative segregation or special assignments. ECF No. 14-5 at 4-5, DOC.100.0002.5.F (listing matters requiring the Commissioner's review).

Given the structure in place for determining when and if an inmate may be removed from PC, it is clear there is no causal link between the Commissioner's lack of involvement in Mr. Scheuerman's review and the injury he ultimately suffered. Aside from Mr. Scheuerman's conclusory and speculative claim that had the Commissioner reviewed his case he would not have been stabbed, there is no indication that the Commissioner had actual or even constructive knowledge of Mr. Scheuerman's transfer to MCIJ, nor did any of the named Defendants have reason to believe that the transfer would result in harm to Mr. Scheuerman. Given the undisputed facts on record, the Commissioner of Correction is entitled to summary judgment in his favor.

**Conclusion**

For the reasons stated herein, the complaint will be dismissed as to the State of Maryland, the motion to dismiss or for summary judgment is construed as a motion for summary judgment as to the remaining Defendants and will be granted. A separate Order follows.

January 21, 2020                                _____/s/_____
                                                       DEBORAH K. CHASANOW
                                                       United States District Judge